Bernice HAYNES and Rose DeBoe,
Plaintiffs-Appellees,

v.

James MILLER, d/b/a Leader Manufac-
turing Company and James Miller Fur-
niture Co., Defendant-Appellant.

No. 80–3642.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1981.

Decided Feb. 5, 1982.

John J. Heron, Pickrel, Schaeffer & Ebel-
ing, Dayton, Ohio, for defendant-appellant.

James H. Lagos, Springfield, Ohio, for
plaintiffs-appellees.

Before WEICK * and KENNEDY, Cir-
cuit Judges and PHILLIPS, Senior Circuit
Judge.

WEICK, Circuit Judge.

Plaintiffs-Appellees, Bernice Haynes, for-
merly Bernice Scott and Rose DeBoe, for-
merly Rose Parker, sued the defendant
James Miller in the federal district court
for damages alleging that he wrongfully
discharged them because of their race in
violation of 42 U.S.C. § 2000e *et seq* and
Section 1981.

Miller answered denying that he was the
employer of plaintiffs-appellees and alleged
that at all times relevant they were em-
ployed by Furniture and Appliances, Inc.,
d/b/a Leader Manufacturing Co., a corpora-
tion duly organized and existing under the
laws of the State of Ohio and located at
6711 Dayton Road, Enon, Ohio. The an-
swer further alleged that the corporation
was forced out of business by the seizure of
its assets for nonpayment of income taxes
by the Internal Revenue Service during

* Judge Weick became a Senior Circuit Judge on    December 31, 1981.

September and October 1974. Defendant further alleged that the plaintiffs-appellees were hired by Furniture and Appliances, Inc. d/b/a Leader Manufacturing Co., an Ohio corporation in April, 1974 and the last day of their employment was April 23, 1974. Defendant denied the allegations of the complaint with respect to the alleged discriminatory discharges and prayed for judgment including an allowance for attorney's fees.

The docket entries disclose the following:

3/4/80 ORDER OF REFERENCE: Pursuant to 28 U.S.C. § 636(b)(1)(B) and 1.2(21) of General Order of this Court, Robert A. Steinberg, U.S. Magistrate, is hereby appointed as Special Master in this action.

. . . . .

6/18/80 TRIAL TO COURT: Recommended decision: that judgment be entered in favor of Plaintiffs and that damages be assessed at four months of lost wages at minimum wage. Recommended decision will be filed in approximately two weeks in the form of a transcript of the Court's remarks.

NOTICE and REPORT AND RECOMMENDATION OF U.S. MAGISTRATE and COURT'S DECISION; Recommended that: Judgment be rendered against defdt and that damages in the amount of One Thousand Six Hundred Sixty-Four Dollars ($1,664.00) representing four months wages at $2.00 per hour, be awarded to Plaintiffs, Bernice Hayes and Rose DeBoe, respectively.

. . . . .

8/21/80 HEARING ON MAGISTRATE'S REPORT held before Judge Rubin in open court. ORDER: R & R (14) is hereby adopted in full. Judgment is rendered against Defendant and damages in the amount of One Thousand Six Hundred Sixty-four Dollars ($1,664.00) representing four months wages at $2.60 per hour is hereby awarded to Plaintiffs Bernice Hayes and Rose DeBoe, respectively.

It will be noted that glaring inconsistencies and errors appear in the docket entries, namely, the alleged "Trial To Court" which was not the court, but the Special Master in which he recommended judgment in favor of the plaintiffs and that damages be assessed at four months of loss wages at minimum wage, the rate which was $2.00 an hour or for $1,280.00 to each plaintiff. In the Notice and Report and Recommendation of U.S. Magistrate and Court's Decision of 7–3–80, it was "Recommended that: Judgment be rendered against defdt. and that damages in the amount of One Thousand Six Hundred Sixty-Four Dollars ($1,664.00) representing four months wages at $2.00 per hour be awarded to Plaintiffs, Bernice Haynes and Rose DeBoe, respectively."

As previously pointed out, this was incorrect since applying the minimum wage of $2.00 an hour, which was the rate applied by the employer to all of his starting employees, the judgment should have been for $1,280.00 for each employee, instead of for $1,664.00. Also, the Special Master's Report made on 7–3–80 should not have been labeled "Court's Decision" since the court had made no decision until 8–21–80, which was made on the same day that the parties argued the case before the court.

Defendant has appealed to this court contending that (1) the award of damages was purely speculative and unauthorized (2) that plaintiffs were employed by the corporation and not by him individually and (3) that the master erred in placing the burden of proof on defendant; that *prima facie* evidence of racial discrimination did not exist; that there was not a scintilla of evidence that the discharge of plaintiffs-appellees was racially motivated or that the defendant intended to discriminate against plaintiffs on account of race.

As well stated by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981):

The ultimate burden of persuading the trier of fact that the defendant *intentionally* discriminated against the plaintiff

remains at all times with the plaintiff. (Emphasis added).

We reverse.

## I

### The Damage Award

In addition to the glaring defects and errors appearing in the docket entries above specified, the Special Master's Report, which is labeled "Court's Decision" and is dated June 18, 1980, and did not become the Court's Decision until August 21, 1980, contains the following statement:

Insofar as damages are concerned, I will say at the outset that I do not credit the testimony of either of the plaintiffs that they were unable to find employment in the time period mentioned. I just don't find any credibility in that testimony and I feel that the amount of damages requested is far in excess of what plaintiffs are entitled to after having worked three weeks at the minimum wage for Mr. Miller.

It's certainly somewhat speculative as to what damages should be because no one knows how long they would have continued there, but the facts do indicate that the business was closed down as a result of the tax sale in September of 1974. And I find that the reasonable amount of damages in this case would be the wages due for a period of four months employment after the time of termination.

Since the Special Master found that the damages claimed involved speculation, it was error for him to make any speculative award. One of the plaintiffs testified as follows:

Q What were you making at the furniture—what was your hourly rate?

A Like I said, somewhere around two sixty, I think.

Q Do you know if that was minimum or what was said to you about the hourly rate when you hired? Do you recall?

A I don't remember that anyone told me unless it was probably Rose and Caroline told me how much I'd be making, but I don't recall Mr. Miller or his secretary telling me exactly how much I'd be making.

The record showed clearly that the employer started out all of his employees, white and black, at the minimum wage which was $2.00 an hour. 29 U.S.C. § 206. The plaintiffs including Walker had only worked a couple of weeks. It was error for the Special Master to award the black employees, who were beginning employees, a larger amount than was being paid to beginning white employees as this constituted reverse discrimination.

Furthermore, there was no logical basis for making the award extend for a period of four months to employees who had worked no more than two or three weeks. The Special Master took this period out of thin air, as there was no evidence to support it.

## II

### The Alleged Discharges

The alleged discharges grew out of an altercation which took place between the defendant and Caroline Walker. The two plaintiffs were sisters and sisters-in-law of Mrs. Walker. They all lived in Springfield, Ohio, and rode together to work at Enon from Springfield. The defendant testified as to the altercation as follows:

Q Do you recall the discussion about the five cents that's been testified to previously?

A I don't recall the discussion but I'm sure that is something that I would have done. As I said, the machine itself is tougher to run and it's harder work and I'm sure that I had made the statement that if she'd learn to run the machine and was doing a good job, could turn out so many pieces, I would give her a raise.

Q Did you subsequently have a discussion with her about that?

A Well, if you're returning to the argument now—

Q Yes, or whatever it was, please describe what happened.

A   Okay.  I think she had been on the job two or three days and I might state there's no way—

Q   This is on the machine?

A   Sewing machine, yes.  There is no possible way anybody's going to learn how to run this machine real well in two or three days.  But aside from that, she was back running the machine.  I came through the factory and she yelled across the room I can do 18 or whatever number of pieces are now, when do I get my raise.

So that's the kind of thing that I don't approve of, and I more than likely said I don't want to discuss it now which has been testified to.  And anyway that led into more of an argument, and I probably—I don't recall exactly, but I'm sure I said either shut up or go get your paycheck.

Q   This was out on the floor now?

A   Yes.

Q   Okay.  Then what happened or what was said then?

A   She didn't shut up and I don't recall whether she had conversation there as to whether she was going to take her sisters and relatives with her or whether we had that up towards the office, but it was—she stated to me that everybody's quitting, you know.  Figure the rest goes and when she had left, she did take the one person with her.  And I assume now—I'm assuming.  I don't recall what I told the girl in the office which I'm not real sure which one.  It had to be one of two girls which I can clear up.  But she seemed—she was a leader.  She run the show.  So I just assumed that when she said her sisters or sister-in-laws are going to leave or quit, that they had quit, and I more than likely told the girl to pull the cards.

From this it appears that Walker was quitting and taking her relatives, the plaintiffs, with her.  At least that is what the defendant believed.  There is nothing about the occurrence to show any racial discrimination on the part of the defendant.

The Special Master stated:

Mr. Miller has advanced as his reason for discharging the two individuals only one fact, and that is the alleged statement of Miss or Mrs. Walker that if she left, she would take plaintiffs with her and, therefore, Mr. Miller assumed they were not returning to work.

The evidence shows and I'm satisfied that there does not appear to be a general pattern of discrimination against blacks in the Miller Furniture business.  It appears to me that Mr. Miller at all times relevant to the testimony in this case is willing to hire individuals of any race so long as they will work for the minimum wage.  And the fact is that he did hire two plaintiffs and their sister-in-law, who he knew were black, and, as Mr. Heron pointed out, he did promote, if that's the correct word, Miss Walker to a position held by a white employee which offered the possibility of better wages.  And both he and Miss Haynes have testified that he offered her Miss Walker's job.  So I do not find a general pattern of discrimination against blacks.

The Special Master continued:

Now, I must follow the law in this circuit, which provides that if a defendant fails to articulate a legitimate reason for his actions after plaintiff establishes a prima facie case, then plaintiff has fulfilled his or her burden.

In this case, I find that Mr. Miller's testimony is inconsistent with the other facts in the case and with other portions of his own testimony.  I find in particular that I'm not able to credit his testimony that he believed Miss Haynes had left employment when he acknowledges the conversation he had with her telling her she could appear the following day and take Miss Walker's job.  I find the two statements entirely inconsistent.

To support that inconsistency or lack of credibility in the defendant's case, there are three matters that I'm relying on.  One, the utilization of the defense in this case that the defendant was a corporation and, therefore, should avoid liability to

me reflects a lack of credibility in the case; secondly, employment records which are missing and were last in the sole control of Mr. Miller; and, thirdly, the ability to call a witness who has relevant testimony to the case and the failure to call that witness, and that is the secretary, Connie, I can't recall her last name, who was the one that was present the morning plaintiffs returned to work.

Now, none of those three facts are dispositive of the case, but, taken together with the inconsistent testimony, I find that defendant has failed to articulate a legitimate reason. I don't mind saying that had Mr. Miller taken the stand and stated that he pulled the cards because he was furious at Miss Walker and wanted to get even or some other reason, the Court might not have difficulty in not finding discrimination in this case. But because of the defense presented and following the law in this circuit, the Court is required to draw the inference that the actions were discriminatory.

This is an erroneous statement as to the law and conflicts with the decision of the Supreme Court in *Texas Department of Community Affairs v. Burdine, supra,* and also the decision of the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiff did not prove by a preponderance of the evidence or by any evidence a *prima facie* case of discrimination. There was not an iota of evidence of discrimination. Plaintiffs had worked only a few weeks. They were employed at will and could be discharged at any time with or without cause. Even if a *prima facie* case of discrimination had been shown, it was rebutted by the evidence as to the altercation of the defendant with Walker and his belief that Walker was taking the two plaintiffs with her. Also, it is important that there was absolutely no evidence offered as to any intent on the part of the defendant to discriminate.

The Special Master relied on three matters to attack the credibility of defendant. He stated: "One, the utilization of the de-

fense in this case that the defendant was a corporation and, therefore, should avoid liability to me reflects a lack of credibility in the case." This is a non sequitur. If the plaintiffs were employed by the corporation, there is no basis for them to sue the defendant who was the majority stockholder. If the plaintiffs had been injured in the course of their employment, they could have recovered the benefits of Workmen's Compensation carried by the corporation, which was duly organized and existing and carried the plaintiffs on its payroll. There was no proof that the corporation was organized for any fraudulent purposes. The corporate employees were also carried on the federal and city income tax records. The plaintiffs along with Walker filed charges of discrimination against the corporation with the Ohio Civil Rights Commission, which resulted in the Commission issuing a Complaint against the corporation which was later dismissed. App. 87. Second, employment records are missing. This arose because Internal Revenue Service levied upon and closed the defendant's place of business and sold most of its assets. Third, defendant did not call a witness, Connie, who was secretary, prior to the shut down of the corporate business by the Internal Revenue Service. She was not so employed at the time of the trial. If plaintiffs really believed that Connie had relevant testimony and was available, they could have called her. In any event, the failure to call a witness does not prove discrimination.

The Special Master then stated:

I find that defendant has failed to articulate a legitimate reason. I don't mind saying that had Mr. Miller taken the stand and stated that he pulled the cards because he was furious at Miss Walker and wanted to get even or some other reason, the Court might not have difficulty in not finding discrimination in this case. But because of the defense presented and following the law in this circuit, the Court is required to draw the inference that the actions were discriminatory.

In other words, the Special Master admits that he had difficulty in finding discrimination, which is obvious from reading his report that he confesses that "because of the defense presented and following the law of this circuit, the court is required to draw the inference that the actions were discriminatory." In other words, we have a novel theory of discrimination by inference without support of any facts upon which an inference could be drawn. From this, it is clear that plaintiffs did not meet their burden of proof. Furthermore, the Special Master is not the court.

In our opinion, the findings of fact adopted by the Special Master are not supported by substantial evidence and are clearly erroneous. His conclusions of law are inaccurate. The district court erred in adopting the factual findings of the Special Master and his conclusions of law set forth in his report styled "Court's Decision". Other issues raised by appellant do not need discussion in view of our holding.

The judgment of the district court is reversed and the cause is remanded with instructions to dismiss the complaint.

CORNELIA G. KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's conclusion that an award of $2.60 per hour is not supported by the evidence. The evidence clearly demonstrates that the defendant paid all his starting employees the minimum wage which, at all relevant times herein, was $2.00 per hour. However, I am unable to agree that there was "no logical basis for making the award extend for a period of four months . . . ." maj. op. at 1127. The four-month period chosen by the Magistrate began when the plaintiffs were summarily discharged and ended when the enterprise was closed by the actions of the Internal Revenue Service. Thus, this period was not taken "out of thin air" as the majority opinion asserts, but rather reflected the Magistrate's judgment that this period comprised the plaintiffs' likely employment span had they not been wrongfully

discharged. Such a finding was not, in my opinion, clearly erroneous.

I am also unable to agree with the majority's implicit holding that the successorship doctrine is inapplicable to the facts of this case. *See EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974). Utilizing the test developed there, *id.* at 1094, I conclude that the corporation formed after the tax sale was a successor corporation to the one forced out of business.

Finally, I am unable to agree that plaintiffs failed to establish a prima facie case of race discrimination. The *Burdine* case, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), of which the Magistrate did not have notice, does not mandate a different conclusion:

The burden of establishing a prima facie case of disparate treatment is not onerous. . . . [It] 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'

*Burdine, supra*, at 253–54, 101 S.Ct. at 1093–94, *quoting Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

In the instant case, plaintiffs demonstrated that although their work had been satisfactory, without explanation they were summarily discharged when other similarly situated white employees were not. In fact, plaintiffs were the only two full-time black employees working for the defendant at the time of their discharge. This is sufficient, in my opinion, to raise an "inference of discrimination." And, contrary to the majority opinion, it is not "novel" to prove discrimination by inference. Indeed, since proving an intent to discriminate is often difficult, proof by inference is often the only method available to a plaintiff.

However, the Magistrate did err in requiring the defendant to bear the burden of proving that his proffered non-discriminatory reason for the firing was in fact the actual reason. As *Burdine* now makes clear:

The defendant need not persuade the court that it was actually motivated by the proffered reasons. [citations omitted]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.

*Id.* at 254–55, 101 S.Ct. at 1094–95. The defendant need only set forth a legally sufficient explanation. The explanation, however, must be actually admitted into evidence, not argued by counsel or surmised by the court. *Id.* at 255 n.9, 101 S.Ct. at 1094 n.9. Here, the explanation which was actually offered by the defendant—that he thought plaintiffs had quit—was rejected by the Magistrate although it was legally sufficient to rebut the prima facie case. This was improper. Once an explanation is offered, plaintiff must demonstrate that it "was not the true reason for the employment decision. . . . [Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra,* at 256, 101 S.Ct. at 1095.

For these reasons, I would remand the case to the District Court for further proceedings in light of *Burdine.*