**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**Eugene FOTIOS, d/b/a Globe Security, Defendant.**

**Civ. A. No. SA–85–CA–448.**

United States District Court, W.D. Texas, San Antonio Division.

May 28, 1987.

Motion For Reconsideration June 30, 1987.

Final Judgment July 15, 1987.

Lora Liss, E.E.O.C., T.A. Guajardo, San Antonio, Tex., for E.E.O.C.

Jeremiah Handy, San Antonio, Tex., for Fotios.

PRADO, District Judge.

This case was brought by the Equal Employment Opportunity Commission, on behalf of eight plaintiffs, alleging sexual harassment and constructive discharge from employment pursuant to Title VII of the Civil Rights Act of 1964.

After a three day trial on the merits on February 24–26, 1987, the parties agreed to settle the liability issue and leave to the court the question of damages for each individual claimant. By separate order entered today, the parties agreed to a permanent injunction prohibiting Defendant from engaging in any form of sexual discrimination and allowing the Commission enforcement and monitoring authority for the next three years.

## I. DAMAGES

The matter now before the court is the question of damages. The Commission filed a brief in support of monetary relief on March 6, 1987. Defendant was given

until March 26, 1987 to respond, but has filed nothing with the court. Although the court generally does not engage in lengthy analysis when one party shows such little interest in the litigation, the fact that the Commission's position is uncontested does not mean that all eight claimants are entitled to the full amount of damages alleged as a matter of law. In the interest of brevity the court will only discuss the individual damage claims which present difficult legal questions.

### 1. MARGARET MUNRO

Margaret Munro was constructively discharged from employment by Defendant on October 25, 1984. Plaintiff's Exhibit 29, whose admissibility was stipulated to by the parties, reflects the dates of employment and unemployment Ms. Munro experienced during the class period (the Commission has only requested damages until December 31, 1986).

Ms. Munro's job at Globe Security was a second job; in addition, she worked forty hours a week for Baptist Memorial Hospital. After her constructive discharge she continued working for Baptist Memorial and in January of 1986 she took a second non-salaried job as a caretaker for an elderly woman. Although Ms. Munro was not paid for this job, she did receive free room and board. It is well settled that such fringe benefits are to be included in calculating back pay awards for Title VII claimants. *See, e.g.,* B. Schlei & P. Grossman, *Employment Discrimination Law* 2d (1983) at 1441.

Although the general rule in most discrimination cases is to require a hearing to determine the amount of individual damages after a finding of liability, *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 361, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977), an individual hearing is not required in all cases. C. Richey, *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts* (Federal Judicial Center rev. ed. 1986) at A–61. When any attempt to reconstruct an individual work history would drag the court into a "quag-

mire of hypothetical judgments," *see e.g., Segar v. Smith,* 738 F.2d 1249, 1290 (D.C. Cir.1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985), an individual hearing is not required. Even if Ms. Munro were to testify about the room and board received as in-kind compensation, the court would have to make an estimate about the monetary value of the compensation received. Accordingly, no hearing is required in this case.

The Commission contends that no adjustment in Ms. Munro's back pay award should be made for her non-salaried job as a caretaker. Two arguments are made in support of this position. First, the Commission argues that the purpose of Title VII is to make injured parties whole and to place them in the position they would have occupied absent the discriminatory actions. Second, the Commission argues that even if the caretaker job should be considered in calculating back pay, no offset should be made because the meals and housing Ms. Munro received were impossible to calculate and any ambiguities should be resolved against the discriminating employer.

The Court has some difficulty discerning the Commission's first argument. The Commission cites testimony from Ms. Munro that she would not have taken the unpaid secondary job if she had continued working for Globe. Apparently, the Commission wants the court to conclude that the caretaker job must be disregarded to place Ms. Munro in a similar position because she would not have agreed to take the secondary job absent the discrimination. This is axiomatic. But the purpose of Title VII back pay awards is to place injured parties in the same *financial* position they would have occupied, not the same *physical* position, which would of course be impossible. If the court concludes that the caretaker job was a replacement job for Ms. Munro's job at Globe, any back pay award should be commensurately reduced.

While it is true that a fundamental purpose of Title VII is to make injured parties whole, *see, e.g., Nord v. U.S. Steel Corp.,* 758 F.2d 1462 (11th Cir.1985), an equally

important principle is that injured parties should not receive a windfall in any back pay award. Schlei & Grossman, *supra*, at 1432. To completely disregard Ms. Munro's caretaker job in this case would result in a windfall.

In determining whether any reductions should be made for Ms. Munro's secondary employment as a caretaker, the court must decide whether the in-kind benefits received were "interim earnings."[1] As a general rule, fringe benefits are included in back pay calculations. *See* Schlei & Grossman, *supra*, at 1441. An analogous principle is that in-kind compensation for services rendered are part of interim earnings. *See id.* at Supp. 285 (1985 ed.), citing, *McCluney v. Joseph Schlitz Brewing Co.*, 540 F.Supp. 1100 (E.D.Wis.1982) (value of ownership interests in oil, coal, and gas exploration ventures to be deducted from awardable back pay; value of in-kind compensation at time received by discrimination victim, not value at time of trial, is amount to be deducted from back pay).

The Fifth Circuit analyzed the interim earnings classification problem in *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 454 (1973). The *Bing* court defined "interim" as meaning temporary or provisional and concluded:

> If a supplemental or moonlight job is one that the discriminatee cannot perform when he wins his new position, the supplemental job is necessarily temporary, provisional or 'interim.' By contrast, if one can hold his supplemental job and his desired full time job simultaneously *and there is reason to believe he will do so,* the supplemental job assumes a permanent rather than interim nature. Those earnings would be independent of the position sought and should not be taken into account in back pay calculations. (emphasis added).

■ Although it might have been physically possible for Ms. Munro to serve as a caretaker and continue to work for Globe

Security, her own testimony, cited in the Commission's brief, establishes that "she would not have agreed to take this unpaid secondary job if she had continued working at Globe." Accordingly, the court finds that the caretaker job was a temporary rather than permanent position and the in-kind benefits received should be deducted from Ms. Munro's back pay award as "interim earnings."

The next difficulty presented is what amount should be deducted from the back pay award. Unfortunately, no testimony was presented by the Commission or elicited by the Defendant concerning the fair value of the room and board Ms. Munro received in exchange for her duties as caretaker. While the court recognizes the difficulty in placing a dollar value on the meals and housing received, it declines to accept the Commission's position. Since it is impossible to make any precise calculation of the value of the in-kind benefits received, the Commission would apparently recommend that the court throw up its hands in frustration and conclude that nothing should be deducted from Ms. Munro's back pay award. This takes the principle that ambiguities should be resolved against the discriminating employer much too far. In *Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir.1981), the only case cited by the Commission, the court refused to abdicate responsibility for approximating a just back pay award. Although the Court of Appeals vacated other aspects of the District Court's award, the court affirmed the trial court's approximation of a class-wide amount to cover the differential in company housing received by non-whites as opposed to Caucasians. In the damages portion of the district court's decision, 28 EMPL.PRAC.DEC. (CCH) ¶ 32, 444 at 23, 955–56 (W.D.Wash. Nov. 18, 1981)[2], the court found:

> ... plaintiffs can recover backpay in the form of lost rental value. The housing

---

1. The relevant statute, 42 U.S.C. § 2000e–5(g), provides: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

2. The liability portion of the district court's decision is reported at 445 F.Supp. 421.

which Nefco provides its employees is part of their compensation.... Discrimination existed, but the remedy for such discrimination presents difficult problems.... Taking all these adjustments into account, and recognizing the impossibility of precise calculations, I find that $55,000 is a generous approximation of the rental value lost to class members through Nefco's housing discrimination. It is much more than plaintiffs would be awarded if they were required to proceed on an individual basis.... Many courts have recognized the need to sacrifice precision for efficiency in fashioning class-action backpay awards, especially where the attempt to grant individual backpay awards would require "a quagmire of hypothetical judgments." *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 260 (5th Cir.1974).

Although class-wide relief is not involved in this particular instance, the court is still required to make an approximation of a reasonable amount to deduct from Ms. Munro's back pay award based on the value of the room and board she received as in-kind compensation from her interim job. The Seventh Circuit in *Stewart v. General Motors Corp.*, 542 F.2d 445, 452 (1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977), announced three general principles which should guide calculation of class-wide back pay awards:

In light of the uncertainty which clouds the task before us, we must set down three general rules: 1) unrealistic exactitude is not required; 2) ambiguities in what an employee or group of employees would have earned but for discrimination should be resolved against the discriminating employer; 3) the district court ... must be granted wide discretion in resolving ambiguities. (citing *Pettway, supra,* at 260–61; *United States v. United States Steel Corp.*, 520 F.2d 1043, 1050–55 (5th Cir.1975).

Taking these general rules into account, this court is now faced with the task of placing a dollar value on the room and board Ms. Munrow received during her period of secondary employment as a caretaker. The total amount of back pay damages the Commission has calculated for Ms. Munro is $10,400.00. The Commission calculated back pay for the period following Ms. Munro's constructive discharge on October 25, 1984 until March 2, 1986. *See* Plaintiff's Exhibit 29. During this entire period, the Commission made no reductions for interim earnings because the job Ms. Munro was constructively discharged from was a secondary job and claimant did not obtain *paid* secondary employment until March 3, 1986. As the court has previously determined, this calculation was erroneous. Between the period January 20, 1985 (when Munro began her unsalaried secondary job as caretaker) and March 2, 1986, some reduction from the back pay award should have been made to take the fair value of the room and board received into account. For the purposes of the court's calculation, this will be considered to be a thirteen (13) month period for which a reduction in the back pay award must be made.

As previously noted, no testimony was received concerning the fair value of the room and board received. In order to approximate the dollar value of the housing received by Ms. Munro, the court will review classified advertisements for one-bedroom rental units in the San Antonio area during calendar year 1985. This method is very inexact, of course, but the court will calculate the value of a one bedroom unit conservatively, in favor of the claimant.[3] The court believes this method of calculation is within the guidelines established by the *Stewart* court. After reviewing newspaper ads, the court finds that a fair monthly value of Ms. Munro's housing was $200.00. Accordingly, this amount should be deducted from the back pay award calculated by the Commission.

Determining a dollar value for the free board Ms. Munro received as a caretaker presents additional problems. In order to arrive at a rough approximation of what

3. Although no testimony was received on this issue, it seems likely that as caretaker for a severely ill woman, Ms. Munro had use of more than one bedroom.

free board was worth to claimant on a monthly basis, the court used the Bureau of Labor Statistics Consumer Expenditure Survey as a baseline. This survey is based on 1982–1983 prices and aggregates what an average consumer unit (2.6 persons) in the South census region of the United States spent on groceries during the year. The figures used by the court did not include amounts spent on meals outside the home. *See* United States Bureau of Labor Statistics, *Consumer Expenditure Survey Interview Portion 1982–1983* (August 1986). Adjusting these figures for inflation and size of the consumer unit, the court estimates that the dollar value of the board provided to Ms. Munro in exchange for her caretaking services in 1985 was approximately $96.00 [4]. Accordingly, the court finds that the amount of back pay calculated by the Commission should be reduced by $1,248.00 ($96 times 13 months).

Combining this board figure with the earlier approximation of the value of the housing received, the court finds that the Commissions' back pay calculation for Margaret Munro should be reduced by $3,848.00 and that Ms. Munro is entitled to receive $6,552.00 in back pay plus 12 percent interest.

## 2. ROSALINDA MONTES

Ms. Rosalinda Montes only worked for Defendant for a total of five hours in early July of 1984. Despite the possibility that Ms. Montes may have left her job for reasons other than sexual harassment (on cross-examination she admitted she was bored with security work), Defendant stipulated that she was constructively discharged from employment. Notwithstanding this claimant's short job tenure, the Commission requests damages for Ms. Montes in the amount of $10,716.71. Although some courts have held that awarding back pay to short-term employees re-

quires too much speculation, *see, e.g., Haynes v. Miller,* 669 F.2d 1125, 1127 (6th Cir.1982), since Defendant has filed no objections to the amount of back pay requested, the Court will not make further reductions in the award.

The legal difficulty with the large amount of this damage claim is that Ms. Montes earned considerably higher wages at her replacement job as compared to her job with Globe Security ($5.25 an hour versus $3.35–3.50 an hour) and was laid off on three occasions at her replacement job with Media Recovery. Ms. Montes took a second replacement job with Alamo Communications, Inc. on October 1, 1986, and earned $3.40 an hour. For the entire damage period which covered approximately 1½ years, the only reduction for interim earnings the Commission made was for this three month period when Ms. Montes worked for Alamo Construction. The Commission only calculated back pay for the periods between July 1984 and October 1986 when Ms. Montes was laid off from her position at Media Recovery. This calculation was proper. However, the Commission did not reduce the back pay awarded by the amount Ms. Montes earned over and above what she would have earned at Globe Security during the periods she was employed at Media Recovery. In effect, the Commission's failure to offset the wage differential against the back pay awarded during the periods of lay-off created a windfall award for Ms. Montes. Absent the sexual harassment, Ms. Montes would have earned between $3.50 and $3.75 an hour for 52 weeks a year. By the Commission's calculations, however, Ms. Montes was credited with earning between $3.50 and $3.75 an hour during periods of lay-off, in addition to $5.25 an hour during periods of employment at Media Recovery. The failure to account for this wage differential means

---

**4.** The Court does not pretend that this figure represents anything other than a gross estimate. The court assumed that food prices had risen between 1983 and 1985 at the same rate as the general consumer price index. The court also assumed that certain economies are realized in shopping for more than one person and that one person might spend 50% of what an average

consumer unit would spend. Mr. Nick Santangelo, an economist with the Bureau of Labor Statistics in Dallas, confirmed in a telephone interview with the court that these assumptions would yield a gross approximation of what one person would have spent for an in home food budget during the 1985 calendar year.

that under the figures submitted by the Commission, Ms. Montes would actually be placed in a *better* position than she would have occupied absent the discrimination, i.e., if she had continued working full-time for Globe Security during the entire 1½ year period.

■ The problem presented here is that the first replacement job Ms. Montes held paid her at a higher rate than she would have made absent the discrimination. Some courts have terminated any award of back pay on the date the better job was obtained. *See, e.g., Harkless v. Sweeny Ind. School District,* 466 F.Supp. 457, 469 (S.D.Tex.), *aff'd on other grounds,* 608 F.2d 594 (5th Cir.1979). In this case, the court believes it would be inequitable to cut-off the back pay award on the date Ms. Montes was first hired by Media Recovery. If Ms. Montes had been fired from her position at Media Recovery for good cause, a different result might be appropriate. *See, e.g., Lamb v. Drilco Division of Smith International,* 32 FEP 105 (S.D. Tex.1983) [Available on WESTLAW, DCT database]. However, in this case, Ms. Montes was laid off for economic reasons and was re-employed by the same employer. In addition, the court received testimony from claimant that she searched diligently for alternate employment during the periods of lay-off. Accordingly, it is not appropriate to cut-off Defendant's back pay liability on the first date Ms. Montes received the higher paying job at Media Recovery, but some reduction of back pay would be appropriate.

One federal district court calculated back pay and interim earnings on a yearly basis to meet the problem of a higher paying replacement job and this seems to be a fair method of calculation. *See Brown v. Colman-Cocker Co.,* 16 FEP 1046 (W.D.N.C. 1975), cited in Schlei & Grossman, *supra,* at 1445.

For the ease of calculation, the court will use three periods to adjust the back pay award suggested by the Commission: July 1984–December 31, 1984; January 1, 1985 —December 31, 1985; and January 1, 1986 —September 31, 1986. The court will cal-culate the amounts earned by Ms. Montes at Media Recovery over and above what she would have earned at Globe during the periods she was employed at Media Recovery and use this differential to reduce the amount of back pay claimed by the Commission.

■ Since Ms. Montes was unemployed for the remainder of 1984 after her constructive discharge from Globe Security, no reduction in back pay needs to be made during the first period selected by the court. During the 1985 year, Ms. Montes worked for the first nine months at a rate $1.50 more per hour than she would have earned at Globe. Since Ms. Montes worked for Media Recovery for approximately 40 weeks in 1985, she earned $2,400.00 more in this period than she would have earned at Globe. (1,600 hours × $1.50). According to the Commission's calculations, Ms. Montes should have been awarded $1,800.00 in back pay for the 1985 period ($150/wk × 12 weeks). Adjusting these figures, the court finds that Ms. Montes is not entitled to any back pay for the 1985 period and the total amount claimed by the Commission should be reduced by $1,800.00.

During the nine-month 1986 period, Ms. Montes was employed by Media Recovery for only three weeks. During these three weeks she earned $60/week more than she would have earned had she stayed with Globe. Accordingly, the amount of back pay Ms. Montes is entitled to receive for the third period is $180.00 less than the Commission calculated.

### 3. RUBY FLOYD

The same problem regarding a higher paying replacement job exists with this claimant, although to a much lesser degree. Ms. Floyd was constructively discharged from Globe Security in mid-November 1984. During the back pay computation period, she only held alternate employment for less than three months, at two different replacement jobs. Ms. Floyd's first replacement job paid her approximately $3.55 an hour (20 cents more per hour than she made at Globe) and lasted from November

16, 1984 until January 7, 1985. The Commission made no offset for this wage differential, but given the minimal sum involved and the division of Ms. Floyd's back pay period into three yearly periods (similar to the division performed in the court's calculation of Ms. Montes' back pay award), the court finds that no reduction in back pay is required for this first replacement job.

The only other job held by Ms. Floyd after her constructive discharge was as a truck driver for two weeks between September 1, 1986 and September 15th. Ms. Floyd earned approximately $250 per week at this job, approximately $100 more per week than she would have earned had she continued working for Defendant. Accordingly, the back pay award submitted by the Commission should be reduced by $200.00.

## 4. HERLINDA LEIJA

The identical problem is involved with this claimant. From April 8, 1985 until January 16, 1986, Ms. Leija earned more than she would have earned at Globe Security, but the Commission made no offset for this wage differential. Unfortunately, no testimony was received on Ms. Leija's rate of pay at this replacement job which makes any adjustment of the back pay award impossible. Accordingly, it is ORDERED that the Commission submit a supplemental affidavit within fifteen (15) days of the signing of this order attesting to the rate of pay Ms. Leija received at the City Water Board.

One additional problem is presented in this claimant's case. For some period of time in 1985 and 1986, Ms. Leija went to school part-time at San Antonio College. The Commission cites one case for the proposition that going to school *full-time* does not cut off back pay liability. *See Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 36 EPD 35, 166 (11th Cir.1985). Other courts, however, have held that full-time enrollment as a college student does cut-off back pay liability. *See, e.g., Washington v. Kroger Co.*, 671 F.2d 1072 (8th Cir.1982); *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975); *Waters v. Heublein, Inc.*, 23 FEP 351 (N.D.Ca.1978). The Commission should submit supplemental briefing on this issue and also recalculate Ms. Leija's back pay award assuming that the court finds her part-time college enrollment cuts off back pay liability. The supplemental brief should discuss whether any cut-off in back pay would be final or if the claimant would be entitled to back pay after returning to the work force full-time after a period of part-time college enrollment.

## 5. OTHER CLAIMANTS

The court has reviewed the Commission's calculations regarding Martha Heim DeLeon, Samuel Davidson, Edie Upperman, and Connie Conley, and finds that no adjustment in back pay awards is necessary. Accordingly, it is ORDERED that the Defendant is liable for back pay and interest in the amounts listed on Plaintiff's Exhibit 29 for these claimants.

In addition to the supplemental briefing and affidavits requested regarding Ms. Linda Leija's back pay claim, the Commission should submit new interest calculations for the adjusted back pay awards ordered for claimants Margaret Munro, Rosalinda Montes, and Ruby Floyd.

## ORDER

## II. MOTION FOR RECONSIDERATION

The matter before the court is the Commission's motion for reconsideration and brief in support of response to court order awarding damages, filed June 15, 1987. On May 28, 1987, this court entered an order granting the named plaintiffs injunctive relief and setting forth a preliminary calculation of monetary damages. In accordance with the court's order, the Commission has recalculated the damage award.

Although the Commission recognizes that this may be an exercise in futility, they nevertheless have provided comprehensive briefing on the damage issue. The court entered a lengthy order on May 28th and will attempt to be as brief as possible in round two.

The Commission does not contest the court's recalculation of damages for Ruby Floyd, but does urge that the court reconsider its position in regards to claimants Margaret Munro, Rosalinda Montes, and Herlinda Leija.

## 1. MARGARET MUNRO

The court ordered that the damage claim submitted by the Commission be reduced in the amount of $3,848.00 on the grounds that in-kind benefits Ms. Munro received from a non-salaried secondary job needed to be included in her interim earnings. The Commission's attempt to meaningfully distinguish the two cases the court relied on are unpersuasive. Accordingly, no adjustment in the damage award of $6,552.00 plus interest is required.

## 2. ROSALINDA MONTES

Since Ms. Montes was unemployed for the remainder of 1984 after her constructive discharge from Globe Security, no adjustment in the back pay award of $2,972.00 calculated by the Commission for this period is necessary.

The original data submitted supporting this claimant was somewhat confusing and the court erroneously assumed that Ms. Montes earned $5.25 per hour throughout her employment at Media Recovery. The new data submitted by the Commission and Ms. Montes' supporting affidavit clarifies her earnings history. The court accepts the Commission's calculation for 1985 which concludes that no back pay is due claimant because her interim income exceeded her hypothetical earnings (what she would have earned had she remained employed at Globe full-time) by $96.00. The court also accepts the Commission's calculation for 1986 which concludes that Ms. Montes is entitled to $5,975.00 for this yearly period.

■ The only remaining issue is whether the excess Ms. Montes actually received in 1985 ($96.00) should reduce her total dam-

age award. The Commission cites two cases for the proposition that any interim income from one period which exceeds hypothetical earnings in that period should not serve to reduce claimant's total back pay award. *See, e.g., Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir.1983); *EEOC v. Riss, International Corp.*, 35 FEP 423 (W.D.Mo.1982) [Available on WESTLAW, DCT database]. The Commission concedes that a federal district court has broad discretion in fashioning an award of relief under Title VII and this court chooses not to follow the *Leftwich* and *Riss* approach for the reasons set forth in the May 28th order.[1] Accordingly, the Commission's request for claimant must be reduced by $96.00, making the total damage award $8,851.00 plus interest.

## 3. HERLINDA LEIJA

■ The court requested that the Commission brief the question of whether Ms. Leija's part-time enrollment in college should serve to cut-off her back pay award. After reviewing the authorities briefed by the Commission, the court decides to adopt the Commission's position and not cut-off the back pay award in January of 1986. The amount Ms. Leija earned at the college bookstore on a work study program should be included as interim income in arriving at a final back pay award, and the Commission's calculations properly adjust for this income. *See* Attachment IV–A to Commission Brief. The court appreciates the Commission's efforts in providing clear alternate methods for calculating back pay.

The court adopts the Commission's calculations as shown in Attachment IV–A with one minor exception. In the 1985 period, Ms. Leija's interim income exceeded her hypothetical earnings by $384.40. This differential should be deducted from the total amount owed, reducing Ms. Leija's award from $2,075.22, as calculated by the Commission, to $1,690.82.

---

1. The court realizes that many courts utilizing a period approach to the calculation of back pay will not carry forward any differential between hypothetical earnings and interim income to

reduce the total award. This court chooses to utilize yearly periods principally for the sake of convenience. *See* Order of May 28th at 14.

### 4. OTHER CLAIMANTS

No other adjustments in the amount of damages calculated are required in the back pay awards ordered by the court on May 28th for the four other claimants. The court adopts the Commission's position that interest in the amount of 12%[2] per annum should continue to accrue until judgment is paid on both the principle back pay due and the withheld wages. *See*

*Brown v. Colman-Cocker Co.*, 16 FEP 1046, 1052 (W.D.N.C.1975). Plaintiff's Attachment VII, a revision of Plaintiff's Exhibit 29 is attached to this order for illustrative purposes. The back pay due and withheld wages calculations are specifically adopted by the court. The interest figures are calculated as of June 30, 1987, and will need to be updated upon Defendant's payment of the judgment.

**2.** The 12% interest rate is based on an approximation of the adjusted prime rate utilized by the Internal Revenue Service during the class damage period. *See, e.g., EEOC v. St. Joseph Paper Co.*, 557 F.Supp. 435, 442 (W.D.Tenn.1983). Although the actual averaged adjusted prime rate between July, 1984, and the end of 1986 may be closer to 11%, since the Commission has not compounded interest quarterly at the 12% rate, little would be gained by requiring the Commission to resubmit an interest award based on an 11% adjusted prime rate. The court notes that Defendant has failed to object to any damage calculations made by the Commission and that a district court need only make a reasonable approximation of damages in fashioning appropriate Title VII relief. *See, e.g., Stewart v. General Motors Corp.*, 542 F.2d 445, 452 (7th Cir. 1976).

ATTACHMENT VII

| PLAINTIFF'S | DATE OF HIRE | DATE OF TERMINATION | RATE OF PAY AT TERMINATION | BACKPAY DUE | 12% INTEREST * ON BACKPAY DUE | WITHHELD WAGES | 12% INTEREST ON ADDED DAMAGES | TOTAL |
|---|---|---|---|---|---|---|---|---|
| MARGARET MUNRO | 8/13/84 | 10/25/84 | $3.50/hr. | $ 6,552.00 | $ 786.24 | $100.00 | $24.00 | $ 7,909.97 |
| MARTHA HEIM DELEON | 2/24/84 | 8/15/84 | $3.50/hr. | $ 6,766.40 | $1,274.09 | $100.00 | $24.00 | $ 8,164.49 |
| HERLINDA LEIJA ** | 7/13/84 | 10/17/84 | $3.50/hr. | $ 1,690.82 *** | $ 323.96 | $100.00 | $24.00 | $2,138.78 |
| CONNIE M. CONLEY | 8/27/84 | 10/25/84 | $3.50/hr. | $ 2,993.00 | $ 567.72 | $100.00 | $24.00 | $ 3,684.72 |
| RUBY FLOYD | 10/19/84 | 11/5/84 | $3.35/hr. | $14,950.00 | $1,794.00 | $100.00 | $24.00 | $17,880.08 |
| EDIE UPPERMAN | 3/16/84 | 7/12/84 | $3.50/hr. | $11,249.02 | $2,113.26 | $100.00 | $24.00 | $13,486.28 |
| ROSALINDA MONTES | 7/5/84 | 7/5/84 | $3.35/hr. | $ 8,851.00 *** | $1,664.43 | $100.00 | $24.00 | $10,639.43 |
| SAMUEL A. DAVIDSON | 3/12/84 | 10/25/84 | $4.00/hr. | $ 5,727.00 | $1,079.87 | $100.00 | $24.00 | $ 6,930.87 |

GRAND TOTAL $70,834.62

Revised Summary Back Wage Computation for affected Class Members

* Interest shall be updated as of date of payment
** Using Attachment IV A
*** Figures recalculated by the court

## III. FINAL JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and consistent with the court's orders of May 28, 1987, and June 30, 1987, final judgment is entered in favor of Plaintiff.

### A. INJUNCTIVE RELIEF

The Court having determined that it has proper jurisdiction and venue in the above-referenced case, having heard testimony and evidence from 11 witnesses, and having considered and reviewed all of the pleadings and the record in this case as a whole including transcripts of the Preliminary Injunction hearing of February 15, 1985 and the contempt proceedings of January 23 & 29, 1987, hereby PERMANENTLY ENJOINS Eugene Fotios, d/b/a Globe Security, its heirs and assigns, administrators, agents, officers, employees, and/or successors in interest from engaging in sexual harassment of its employees (past, present, or future) and/or otherwise violating Title VII of the Civil Rights Act of 1964. The Defendant is hereby ORDERED not to discriminate against employees or applicants for employment on the basis of sex.

It is FURTHER ORDERED that the Defendant, Eugene Fotios, d/b/a Globe Security its heirs and assigns, administrators, agents, officers, employees, and/or successor in interest is hereby enjoined from retaliating in the future against any individual who asserted a right, benefit or condition of employment under the sex discrimination provisions of Title VII and/or participated or otherwise assisted this Court or the Equal Employment Opportunity Commission in this cause of action.

The Defendant is ORDERED to post in a highly visible location in the Globe Security Office, where applicants are to be interviewed, the attached NOTICE (See Appendix A). This NOTICE is to be posted for the duration of three years.

The Defendant is permanently enjoined from giving any negative references to any person or company, including prospective employers, regarding the affected class members.

The Defendant is permanently enjoined from intentionally communicating by telephone, personal contact, agent, or by any other manner, with any affected class member.

The Court shall retain jurisdiction over this action, in order to ensure full compliance by the Defendant with the ORDER and Title VII of the Civil Rights Act of 1964.

### MONITORING AND RECORDKEEPING

Upon reasonable notice, the Commission through its representatives shall be allowed to inspect the Company's premises and shall have access through private interviews of employees during their work hours, not to exceed one hour, for the purpose of observing and/or interviewing employees to ensure compliance with this Order. Representatives of the Commission shall be provided access to all personnel records, documents and files relating to past, present and future employees and applicants for employment, including, but not limited to the following: applications, applicant files, personnel reports to government agencies, such as Texas Employment Commission, FICA, IRS, payroll records, disciplinary actions, promotions, wage increases, terminations, and all other records relevant to this Order. These visits to the premises may occur as frequently as once each month for the first six months, and once each three months thereafter, for the duration of this Order.

The duration of the monitoring and Recordkeeping provisions of this Order shall be three (3) years from the effective date.

### TERMS AND CONDITIONS

The parties agree to attempt to resolve any dispute as to the terms of this Order before resorting to Court enforcement. The party seeking resolution of a dispute shall notify the other party within 30 days notice before resorting to a written motion before the Court, unless it is necessary to preserve the status quo.

### B. MONETARY RELIEF

Defendant shall pay to Plaintiff the sum of $70,834.62.[1]

APPENDIX A
NOTICE
AS REQUIRED UNDER TITLE VII OF
THE CIVIL RIGHTS ACT OF 1964

1. This NOTICE to all employees of Globe Security is being posted as part of an agreement between the Globe Security and the U.S. Equal Employment Opportunity Commission.

2. Federal law requires that there be no discrimination against any employee or applicant for employment because of that person's race, color, religion, sex, national origin or age with respect to hiring, compensation, promotion, discharge, or other terms, conditions or privileges of employment.

3. Globe Security strongly supports and will comply with such Federal law in all aspects and it will not take any action against employees because they have exercised their rights under the law by filing charges with the U.S. Equal Employment Opportunity Commission. Should you be sexually harassed by any individual while employed by Globe Security, you are strongly encouraged to seek assistance from the Equal Employment Opportunity Commission.

4. Globe Security will disseminate to all of its employees that sexual harassment and discrimination on the basis of sex will not be tolerated. Violators will receive appropriate disciplinary action, up to and including termination.

5. Globe Security will make appropriate restitution to all employees and/or applicants for any losses they suffered as a result of any treatment of them prohibited by Equal Employment Opportunity law. Specifically, appropriate restitution will be made to Connie Conley and other aggrieved parties for any losses suffered as a result of such treatment.

6. This NOTICE will remain posted until March 1, 1990, by direction of the U.S. Equal Employment Opportunity Commission.

SIGNED _____ ___ day of _____, 1987

_____ Globe Security

DO NOT REMOVE THIS NOTICE UNTIL MARCH 1, 1990

1. Interest in the amount of 12% annually shall be recalculated upon the date of Defendant's payment of the judgment. *See* Order of June 30, 1987 at 5–6.