Alexander **WILSON**, individually and as representative of all minority shareholders of Chenango Industries, Inc., other than defendants on and before October 18, 1979, Plaintiff,

v.

**GREAT AMERICAN INDUSTRIES, INC.** as a corporate entity and as a sole shareholder of Chenango Industries, Inc., Milton Koffman, Burton I. Koffman, Richard E. Koffman, as directors of Great American Industries, Inc., Chenango Industries, Inc., Joseph M. Stack as the representative of Chenango Industries in the merger between Chenango and Great American Industries, and Gary Crounse, David Keith Dyer and Sharon Lee Dyer, as Co-Executors of the Estate of David L. Dyer, deceased, William Starner, and Anthony Mincolla as directors of Chenango Industries, Inc., Defendants.

No. 80–CV–841.

United States District Court, N.D. New York.

Aug. 14, 1991,

---

**86**

Coughlin & Gerhart, Binghamton, N.Y. (Peter H. Bouman, of counsel), for plaintiff.

Beveridge & Diamond, Washington, D.C. (John N. Hanson, John S. Guttmann, Daan H. Cannon, of counsel), for GAI defendants.

Hancock & Estabrook, Syracuse, N.Y. (Donald J. Kemple, of counsel), for Chenango defendants.

MEMORANDUM–DECISION & ORDER

McCURN, Chief Judge.

### I. *Background*

This action arose out of the merger in 1979 of defendant Great American Industries, Inc. ("GAI") and defendant Chenango Industries, Inc. ("Chenango"). The plaintiff, Alexander Wilson, was a minority shareholder in Chenango. Wilson is the class representative for minority shareholders on the date of the merger. This court, in *Wilson v. Great American Indus., Inc.*, 661 F.Supp. 1555 (N.D.N.Y.1987) ("*Wilson I*"), granted judgment in favor of the defendants, finding that none of the plaintiffs' claims under the federal securities statutes had merit. The Second Circuit reversed that decision in *Wilson v. Great American Indus., Inc.*, 855 F.2d 987 (2d Cir.1988) ("*Wilson II*"), holding that the proxy statement issued by the defendants contained five material omissions and misrepresentations in violation of section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a); and Rule 14a–9, 17 C.F.R. § 240.14a–9. The Second Circuit remanded for calculation of damages.

A hearing on damages was conducted, and this court, in *Wilson v. Great American Indus., Inc.*, 746 F.Supp. 251 (N.D.N.Y.1990) ("*Wilson III*"), awarded damages to the plaintiff class in the amount of $776,000 together with interest from the date of the merger, totalling $2,140,777.03. The defendants then

brought a motion for reconsideration of that decision, and the court, in *Wilson v. Great American Indus., Inc.*, 763 F.Supp. 688 (N.D.N.Y.1991) (*"Wilson IV"*), amended the previous judgment to correct a clerical error in the previous interest calculation; to add certain shareholders to the plaintiff class which plaintiffs maintained had been wrongly excluded; and to offset the amount of damages to class members who had received cash payments instead of GAI Series B preferred stock at the time of the merger. Final judgment in the amount of $808,892.27, together with interest from the date of the merger, for a total of $2,211,837.94, was entered on July 2, 1991.

The defendants have now moved for reconsideration of *that* decision, and the decision in *Wilson III*. The defendants maintain that the Supreme Court's decision in *Virginia Bankshares, Inc. v. Sandberg*, —— U.S. ——, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), issued subsequently to *Wilson IV*, precludes damages to the minority shareholders. In *Virginia Bankshares*, the Supreme Court held that minority shareholders whose votes were not required by law or corporate bylaw to authorize a merger were not entitled to damages under section 14(a) of the Securities Exchange Act, even if their votes were solicited by a false or misleading proxy statement. Defendants' motion for reconsideration, and for the court to alter or amend its previous judgments, pursuant to Fed. R.Civ.P. 52(b), 56, and 59(e), was brought on by order to show cause. Presently before the court is the return of the order to show cause, which seeks an order permitting reconsideration and reargument. The ultimate relief defendants seek is summary judgment in their favor. Plaintiffs oppose the motion for reconsideration on three grounds: (1) defendants' filing of a notice of appeal prior to filing the motion for reconsideration divests this court of jurisdiction over the motion; (2) a ruling by this court on the application of *Virginia Bankshares* would exceed the mandate issued by the Second Circuit when it remanded for a

calculation of damages; and (3) *Virginia Bankshares* is distinguishable from the instant case and would not preclude damages to the plaintiffs here.[1]

## II. *Discussion*

### A. NOTICE OF APPEAL

On July 11, 1991, the defendants filed a notice of appeal from the court's various judgments in this action, including those issued in accordance with the court's decisions in *Wilson III* and *Wilson IV*. The defendants filed a second notice of appeal on July 12, 1991, and plaintiffs filed a notice of cross-appeal. The defendants brought their motion for reconsideration by order to show cause on July 12.

■ The plaintiffs argue that once defendants' notice of appeal was filed, the court was divested of jurisdiction over those aspects of the case involved in the appeal. The plaintiffs rely on, among other cases, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). While *Griggs* recites the general rule advanced by plaintiffs, it actually stands for the proposition that a motion to alter or amend a judgment pursuant to Rule 59(e) extinguishes a previously filed notice of appeal. *Griggs* quotes Fed. R.App.Proc. 4(a)(4), which states, in pertinent part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 ..., the time for appeal for all parties shall run from the entry of the order denying ... such motion. *A notice of appeal filed before the disposition of [such motion] shall have no effect....*

(emphasis added). The Supreme Court also cites Moore's Federal Practice on this point: "Professor Moore has aptly described the post–1979 effect of a Rule 59 motion on a previously filed notice of appeal: 'The appeal simply self-destructs.'" *Griggs*, 459 U.S. at 61, 103 S.Ct. at 403.

---

**1.** The plaintiffs have petitioned the Second Circuit for a writ of mandamus and prohibition, pursuant to Fed.R.App.Proc. 21, to direct this court to vacate the order to show cause, based on grounds (1) and (2). The Second Circuit has not yet acted on the petition.

■ Here, defendants' motion was timely filed, albeit by an order to show cause. Consequently, the notice of appeal is of no effect, and the court has jurisdiction to consider the motion.

## B. SECOND CIRCUIT'S MANDATE

Plaintiffs next argue that, even if this court has jurisdiction to consider the motion, it would exceed the Second Circuit's mandate to calculate damages only, if it ruled on the applicability of the *Virginia Bankshares* decision.

The Second Circuit in *Wilson II*, in reversing this court's decision granting judgment to the defendants, determined that the defendants had violated the securities laws by material omissions and misrepresentations in the proxy statement. The defendants' liability was thus established by the Second Circuit. The Second Circuit then held that "the plaintiffs are entitled to recover damages equivalent to the benefit of the bargain they would have obtained had full disclosure been made." *Wilson II*, 855 F.2d at 996. The case was remanded "for further proceedings to assess damages and enter a judgment not inconsistent with this opinion." *Id.* at 997.

Plaintiffs argue that the question of whether plaintiffs have demonstrated their entitlement to damages under *Virginia Bankshares* is a question of *liability*, not damages. This court would thus be acting outside the Second Circuit's mandate in making that determination. The defendants contend that (1) *Virginia Bankshares* only goes to the issue of damages, and would not disturb the Second Circuit's decision that the proxy statement was false and misleading; (2) *Virginia Bankshares* presents a question of law that the Second Circuit could not have decided; and (3) a district court may on remand consider the effect of an intervening change in the governing law.

In *Virginia Bankshares*, the Supreme Court considered whether "causation of damages compensable through the implied right in Section 14(a) can be demonstrated by a member of a class of minority shareholders whose votes are not required by law or corporate bylaw to authorize the transaction giving rise to the claim." *Id.*, — U.S. at —, 111 S.Ct. at 2755. The court held that causation could not be demonstrated. *Id.* The case involved the merger of First American Bank of Virginia ("Bank") into a subsidiary of First American Bankshares, Inc. ("FABI"), called Virginia Bankshares, Inc. ("VBI"). VBI owned 85 percent of the Bank's shares, while the remaining 15 percent of the shares were held by some 2,000 minority shareholders, who would lose their interest in the Bank as a result of the merger. A consulting firm gave the opinion that $42 per share would be a fair price for the stock held by the minority shareholders. *Id.* at — — —, 111 S.Ct. at 2755–56.

Virginia law required only that the merger proposal be submitted to a vote at a shareholders' meeting, preceded by a statement of circulation to the shareholders. Nevertheless, the Bank chose to issue a full proxy statement. Under Virginia law, a two-thirds vote was required to approve the merger, and the merger was approved. The proxy statement was found by a jury to be false and misleading, and an additional $18 per share was awarded as damages. The Fourth Circuit affirmed. *Id.* at —, 111 S.Ct. at 2756.

The Supreme Court found, however, that, even though the proxy statement was false and misleading, the minority shareholders did not establish the required causal connection between the proxy statement and "the votes legally required to authorize the action proposed." *Id.* at —, 111 S.Ct. at 2763. In other words, since the votes of only two-thirds of the shares were required to approve the merger, the votes of the minority shareholders were not legally required to approve the merger. The Court held that a private right of action under section 14(a) did not exist absent this causal connection. *Id.*

■ Ordinarily, the district court must carry out a mandate from the circuit court as it is received without reexamination. *Crane Co. v. American Standard, Inc.*, 439 F.Supp. 945, 959 (S.D.N.Y.1977). This rule, an extension of the "law of the case"

doctrine, is not without exception, however, and "[a district court] is not bound by the mandate of the Court of Appeals if the Supreme Court has subsequently changed or clarified the relevant law." *Id.; see also Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 178 (2d Cir.1967), *cert. denied*, 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151 (1968) ("[o]ther courts in applying the law of the case rule have held that a lower court is not bound to follow the mandate of an appellate court if the mandate is, in the interim, affected by an authority superior to the court issuing the mandate"). Therefore, this court has the authority to deviate from the Second Circuit's mandate in considering the application of the Supreme Court's recent pronouncement in *Virginia Bankshares.*

▪ Plaintiffs' argument that the *Virginia Bankshares* decision goes to the issue of liability, and not damages, does not sway the court. It is a close question whether *Virginia Bankshares* stands for the proposition that there is no liability to a minority shareholder whose vote was not legally required to authorize an action, or that that shareholder is not entitled to damages. The alternative to considering the motion—obtaining leave from the Second Circuit to consider it—would simply add an additional step which would further delay this already protracted litigation and unnecessarily burden the appellate court. *See Crane*, 439 F.Supp. at 949 (citing *Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976)). In addition, " 'like the original district court judgment, the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events.' " *Id.* (quoting *Standard Oil*).

## C. RECONSIDERATION UNDER *VIRGINIA BANKSHARES*

There are three grounds which are generally accepted as justifying reconsideration of a matter already decided: "an intervening change of controlling law, the avail-

ability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Soc. Serv.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Defendants here obviously urge the court to reconsider its previous decisions based upon a change in controlling law caused by *Virginia Bankshares.* To warrant a change in a previous judgment, the change in the law "must truly be significant and controlling." *Sango v. City of New York*, 1989 WESTLAW 86995 (E.D.N.Y.1989) (citing *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982)).

▪ The defendants argue that *Virginia Bankshares* is identical to the circumstances presented here, and warrants vacating the previous judgments and dismissing plaintiffs' action. Defendants note that in neither case were the defendants required to issue proxy statements, but they chose to do so. In both cases, the defendants controlled sufficient votes to authorize the merger, regardless of the votes of the minority shareholders. Thus the defendants urge that the holding in *Virginia Bankshares*, that minority shareholders whose votes are not legally required to effect a merger have no cause of action under section 14(a), even if a proxy statement recommending the merger is false and misleading, should be applied here.

The plaintiffs argue that *Virginia Bankshares* is distinguishable from the instant case, and is limited to its facts. The plaintiffs claim that a minority shareholder who has been induced by a misleading proxy statement to forfeit a state-law right to an appraisal remedy [2] or deterred from obtaining an injunction by voting to approve the transaction still has a right of action under section 14(a). Plaintiff relies on *Cole v. Schenley Indus., Inc.*, 563 F.2d 35 (2d Cir. 1977), in which the defendant corporation held 84 percent of its outstanding stock and announced in its proxy statement that it

---

**2.** The right of a shareholder to seek appraisal and payment of the fair value for his or her

shares is contained in New York Bus.Corp.Law § 623.

intended to vote for a merger. The court stated that:

> The threshold question is whether "the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction." *Mills v. Electric Auto-Lite Co.* [citation omitted].

*Id.* at 39. The court observed that a minority shareholder had four options at the time of the merger: (1) accept the corporation's offer; (2) seek appraisal rights under state law; (3) threaten to seek appraisal rights in an attempt to force the corporation to improve its offer; or (4) seek to enjoin the merger. *Id.* "In view of these three alternatives to accepting the [corporation's] offer, we hold that the proxy solicitation was an essential part of the merger." *Id.* at 40.

The plaintiffs contend that they forfeited their state-law appraisal rights by voting for the merger. They also argue that defendants sought 85 percent of the votes to approve the merger, and that if they did not receive them, the merger would not have been accomplished.

The defendants correctly argue that the *Cole* holding has been watered down by *Virginia Bankshares.* According to the Supreme Court, claims based on what the plaintiffs or defendants might have done if the proxy statement was not misleading would turn on " 'hazy' issues inviting self-serving testimony, strike suits, and protracted discovery." *Id.,* —— U.S. at ——, 111 S.Ct. at 2765. The Court rejected the minority shareholders' argument that the Bank had required a large percentage of shares in order to avoid bad shareholder or public relations. *Id.* Similarly, the plaintiffs' argument here that the defendants sought 85 percent of the voting shares, even though they were not legally required to authorize the merger, would likely fail.

However, *Virginia Bankshares* expressly declined to address whether a cause of action, or causal link, may still exist under section 14(a) for minority shareholders who forfeited state-law rights by voting for the merger. The Court stated:

> This case does not . . . require us to decide whether § 14(a) provides a cause of action for lost state remedies, since there is no indication in the law or facts before us that the proxy solicitation resulted in any such loss.

*Id.* at ——, 111 S.Ct. at 2766.[3] In fact, the respondents argued that causation could be recognized where a minority shareholder has been induced by a misleading proxy statement to forfeit state appraisal rights, or deterred from obtaining an injunction enjoining a damaging transaction, yet the Court explicitly refrained from addressing the issue. Justice Kennedy also observes, in his decision concurring in part and dissenting in part, that "[t]he majority avoids the question whether a plaintiff may prove causation by demonstrating that the misrepresentation or omission deprived [plaintiff] of a state law remedy. I do not think the question difficult, as the whole point of federal proxy rules is to support state law principles of corporate governance." *Id.* at ——, 111 S.Ct. at 2773.

The defendants contend that plaintiffs had available under state law the remedy of rescission of the merger, pursuant to N.Y.Bus.Corp.Law § 623. Although plaintiffs raised that claim in this action, the court dismissed it for plaintiffs' failure to properly pursue it. As a result, the defendants contend, the plaintiffs had available a state-law remedy which they were not deprived of by the misleading proxy statement, and are therefore similarly situated to the plaintiffs in *Virginia Bankshares.* The defendants also note that plaintiff Wilson stated during trial he would not have pursued his state appraisal remedy because of cost, and that five other shareholders dissented from the merger and sought their appraisal rights.

■ This court has never decided, and it is not clear, whether plaintiffs may have been deprived of some available state-law remedies by the misleading proxy statement. Rescission of the merger is, according to counsel, one available remedy. However, the minority shareholders here

---

3. The Court observed that appraisal rights are not available in Virginia to shareholders in- volved in bank mergers. *Id.* at ——, 111 S.Ct. at 2766 n. 14.

may, by reason of the misleading proxy statement, have been deprived of their appraisal rights. They may also have forfeited forms of equitable relief other than rescission available under N.Y.Bus.Corp.Law § 623(k) to shareholders who have been defrauded, including an injunction enjoining the merger. Such equitable relief is to be determined on a case-by-case basis. *See Loengard v. Santa Fe Indus., Inc.*, 70 N.Y.2d 262, 266–67, 519 N.Y.S.2d 801, 803, 514 N.E.2d 113, 114–15 (1987). Plaintiffs here are thus not in the same situation as the Supreme Court viewed that of the plaintiffs in *Virginia Bankshares.*

*Virginia Bankshares* expressly left open the question whether shareholders who may have forfeited state law rights in approving a corporate transaction might still have a cause of action under section 14(a). Consequently, *Virginia Bankshares* is not controlling law on that issue. *Virginia Bankshares* does not clearly dictate that the plaintiffs here have no cause of action, and therefore does not warrant overturning this court's previous decisions. Accordingly, the defendants' motion for reconsideration is denied.

IT IS SO ORDERED.